IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 14, 2015

**STATE OF TENNESSEE v. RAMONE HUNTER**

**Appeal from the Criminal Court for Shelby County**
**No. 13-01561     Lee V. Coffee, Judge**

**No. W2014-01389-CCA-R3-CD  -  Filed July 15, 2015**

The defendant, Ramone Hunter, appeals his Shelby County Criminal Court jury convictions of aggravated robbery and aggravated burglary, claiming that the evidence adduced at trial was insufficient to support his convictions. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and NORMA MCGEE OGLE, J., joined.

Barry W. Kuhn (on appeal) and Kathy Kent and Lisa Kutch (at trial), Assistant District Public Defenders, for the appellant, Ramone Hunter.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Sam Winnig, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In April 2013, the Shelby County Criminal Court grand jury charged the defendant with one count of aggravated robbery and one count of aggravated burglary arising out of the home invasion and armed robbery of the victim, Jerry Wolfe. The trial court conducted a jury trial in May 2014.

Because the victim was deceased at the time of trial, the State admitted into evidence audio recordings of the victim's 9-1-1 call and the victim's testimony at the defendant's preliminary hearing. At the preliminary hearing, the victim testified that the defendant, a friend of his, had visited him at his apartment on the evening of November 9, 2012, to show the victim a cellular telephone he was selling. The victim declined to

purchase the telephone, and, after a brief visit, the defendant left. A few minutes later, the victim heard a knock at his front door. Because the victim was expecting a visit from his daughter, he opened the door without first determining who was there. As soon as he opened the door, "a gun was in [his] face." The man wielding the gun was someone he had never seen before, but the defendant was standing at the door with the assailant. The assailant forced the victim back into his apartment and asked the victim for money. The assailant then struck the victim in the head with the handgun and stole the victim's wallet and cellular telephone. The victim testified that the defendant just "sat back and watched it happen." After the unknown assailant had collected the victim's wallet and telephone, both the assailant and the defendant left the apartment together, and the victim telephoned 9-1-1 a few minutes later.

On the recording of the 9-1-1 call, which was placed at 8:56 p.m. on November 9, the victim told the operator that he had just been robbed, explaining that someone had knocked on his door and that when he had opened the door, a man was pointing a gun at him. The victim gave the operator his address and told the operator that he knew one of the intruders but that the intruder he did not know had struck him with the gun and stolen his money and his cellular telephone.

Memphis Police Department ("MPD") Officer Johnny Kumpe responded to a call of a robbery on November 9 at a rooming house located at 1160 Central. When Officer Kumpe arrived, he found the victim seated on the steps just outside his apartment, holding a towel to an open wound on his head. The victim explained that the suspects had "knocked on the door and came in and forced him to give them some money and then the cell phone and then struck him in the head." The victim told Officer Kumpe that he knew one of the suspects by the street name, "Rome," and that Rome "was known to frequent 1161 Linden." The victim also told Officer Kumpe that Rome had visited him at his apartment prior to the robbery. The victim later participated in a photographic lineup and positively identified the defendant as the man who had participated in the home invasion and robbery on November 9. On November 21, MPD officers located the defendant at 1161 Linden and placed him under arrest.

With this evidence, the State rested. Following a *Momon* colloquy, the defendant elected to testify.

The defendant testified that he uses the nickname, Rome, and that he was acquainted with the victim, explaining that he and the victim would often play chess together when the victim resided at 1161 Linden. On November 9, the defendant went to the victim's apartment at approximately 6:30 p.m. for a visit. Around 7:30 p.m., the defendant left. He stood outside the victim's apartment for a moment while searching for a cigarette lighter. Meanwhile, a person from an apartment on an upper floor walked past

the defendant and knocked on the victim's door. After the defendant lit his cigarette, he heard the sound of scuffling behind him. He walked back to the victim's apartment and saw a man holding the victim at gunpoint and demanding money. When the victim replied that he had no money, the man struck the victim with the handgun. The victim then admitted that there was money in his nightstand. The man took the victim's money and telephone and walked out of the apartment. According to the defendant, the man never spoke to the defendant, and the defendant never spoke to him.

After the assailant had left, the victim asked the defendant to stay at his apartment so that he could speak with law enforcement officers. The defendant declined, explaining that he had marijuana on his person, and the defendant told the victim to send officers to his apartment at 1161 Linden. The defendant claimed that the victim came to his apartment one week later and asked if the defendant knew the man who had robbed him. The defendant said he did not, and when the victim asked if law enforcement officers had ever contacted the defendant, the defendant said no.

Based on this evidence, the jury convicted the defendant as charged of aggravated robbery and aggravated burglary. The defendant waived his right to a formal sentencing hearing and, in accordance with the agreement of the parties, the trial court imposed a sentence of 10 years for the aggravated robbery conviction and three years for the aggravated burglary conviction, to be served concurrently for a total effective sentence of 10 years' incarceration.

Following the denial of his timely motion for new trial, the defendant filed a timely notice of appeal. In this appeal, the defendant contends only that the evidence adduced at trial was insufficient to support his convictions. We disagree.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must

afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As charged in this case, aggravated robbery is "robbery as defined in § 39-13-401 . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402(a)(1). "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id.* § 39-13-401(a). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103.

"A person commits burglary who, without the effective consent of the property owner . . . [e]nters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony . . . ." *Id.* § 39-14-402(a)(1). Aggravated burglary is "burglary of a habitation." *Id.* § 39-14-403(a).

Moreover, "[a] person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." T.C.A. § 39-11-401(a). Additionally, criminal responsibility for the actions of another arises when the defendant, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, . . . solicits, directs, aids, or attempts to aid another person to commit the offense." *Id.* § 39-11-402(2); *see State v. Lemacks*, 996 S.W.2d 166, 170 (Tenn. 1999) ("As reflected in this case, criminal responsibility is not a separate, distinct crime. It is solely a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person.").

In the instant case, the proof adduced at trial established that the defendant was acquainted with the victim and that he visited the victim's residence on the evening of November 9, ostensibly to sell a cellular telephone to the victim. A few minutes after leaving the victim's home, the defendant returned to the front door of the victim's residence with another man. When the victim answered the knock on his door, the unknown assailant pointed a gun at the victim and forced the victim inside, demanding his money, while the defendant stood by and observed. After the assailant struck the victim with a handgun and stole the victim's money and telephone, the unknown assailant and the defendant left the victim's apartment together. The defendant denied any responsibility in the attack, claiming that he was merely an innocent bystander. As this court has previously stated, "[i]t is the jury's province, as the trier of fact, to determine which parts of the testimony and evidence to credit, and there is no requirement that a

jury must wholly accept or reject a witness's account of events." *State v. Gene Shelton Rucker, Jr.*, No. E2002-02101-CCA-R3-CD, slip op. at 6 (Tenn. Crim. App., Knoxville, Dec. 9, 2004) (citing *State v. Bolin*, 922 S.W.2d 870, 876 (Tenn. 1996)). Although the defendant denied involvement in the crimes, the jury was free to reject this testimony. *See Gene Shelton Rucker, Jr.*, slip op. at 6.

Viewing this evidence in the light most favorable to the prosecution, we hold that the evidence adduced at trial sufficiently established that the defendant and the unknown assailant entered the victim's residence without the victim's effective consent and with the intent to rob the victim; that the unknown assailant intentionally stole the victim's property and accomplished the theft by use of a deadly weapon; and that the defendant intentionally aided the unknown assailant in the commission of the crimes. Thus, the defendant was criminally responsible for the acts of the unknown assailant and is therefore guilty of aggravated robbery and aggravated burglary.

In conclusion, the evidence is sufficient to support the defendant's convictions of aggravated robbery and aggravated burglary. Accordingly, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE